**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:14-cv-20372-WILLIAMS/TURNOFF**

**UNITED STATES OF AMERICA,** *ex rel.***,**
**BEATRIZ AQUINO, Relator,**

    **Plaintiff,**

vs.

**UNIVERSITY OF MIAMI, a Florida nonprofit corporation d/b/a UNIVERSITY OF MIAMI HOSPITAL and UNIVERSITY OF MIAMI MILLER SCHOOL OF MEDICINE, DR. NESTOR DE LA CRUZ-MUÑOZ, and JOHN DOES 1-10,**

    **Defendants.**
_____/

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT**

Defendant, University of Miami (the "University"), by and through undersigned counsel, hereby replies in support of its Motion for Final Summary Judgment (the "Motion") (D.E. 81). The Response in Opposition (the "Response") (D.E. 88) filed by Plaintiff, Beatriz Aquino ("Aquino"), merely underscores why summary judgment in favor of the University is appropriate on Aquino's remaining claim of retaliation under the FCA. Despite Aquino's attempt to muddy the record by relying on (1) a sham affidavit that directly contradicts her deposition testimony; (2) unauthenticated documents; and (3) deposition testimony from her criminal case in which the University was not even a participant, several things nevertheless are clear as a matter of law. First, Aquino has failed to engage in any statutorily-protected activity under the FCA. Second, Aquino has failed to establish that any decisionmaker was aware of her alleged statutorily-protected

activity, thereby failing to establish causation. Finally, Aquino has failed to establish that the University's reasons for terminating her employment (her admitted theft and violation of the University's computer use and conflict-of-interest policies) was pretextual. For any of these reasons, summary judgment in favor of the University is proper.

## OVERVIEW OF AQUINO'S RESPONSE

Among other things, the University's Statement of Undisputed Material Facts established through deposition testimony, sworn affidavit and authenticated business records that the University has policies that prohibit conflicts of interest and the use of University e-mail for personal gain (D.E. 82 ¶¶ 3, 6); that Aquino violated those policies (D.E. 82 ¶¶ 16-19); that Aquino was responsible for University money that went missing (D.E. 82 ¶ 22); that the University investigated Aquino's misconduct (D.E. 82 ¶ 26); that three people (Rafic Warwar, Karen Stimmell and Dr. Sheri Keitz) made the decision to terminate Aquino's employment (D.E. 82 ¶ 26); that Aquino has no knowledge about the University's Medicare billing practices (D.E. 82 ¶ 30); that Aquino's only alleged protected conduct related to her alleged complaints regarding an alleged practice of collecting $2,500.00 from Medicare patients directly and an alleged HIPAA violation (D.E. 82 ¶ 30); and that none of the decisionmakers had any knowledge about her alleged protected conduct (D.E. 82 ¶ 33).

Under applicable rules, "[a]ll material facts set forth in the movant's statement . . . will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. L. R. 56.1(b); *Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1329 (S.D. Fla. 2012) (entering summary judgment based on plaintiff-employee's failure to rebut key statements in defendant-employer's statement of facts). The burden then shifts to the non-moving party to rebut those statements with evidence.

Not only has Aquino failed to do so with any admissible evidence, in many instances she affirmatively admitted them. (D.E. 92 ¶¶ 3, 6, 16-19, 22, 26, 30, 32, 33.) These concessions, standing alone, are fatal to Aquino's claim.

Her legal Response fares no better. As a threshold matter, Aquino failed to address many of the arguments raised in the University's Motion, including (1) that protected activity under the FCA <u>requires</u> the actual submission of false claims to the government (of which there is no evidence in this record); and (2) that Aquino's admitted misconduct would sever any causal connection between her alleged protected activity and her termination. By failing to address these points, Aquino has conceded them. *See Grant v. Miami-Dade Cty.*, No. 13-22008-CIV, 2014 WL 7928394, at *9 (S.D. Fla. Dec. 11, 2014) (citing *Mitchell v. ConAgra Foods, Inc.*, 448 F. App'x 911, 914 (11th Cir. 2011)). Finally, there is not a scintilla of evidence in this record that any of the decisionmakers (Rafic Warwar, Karen Stimmell and Dr. Sheri Keitz) had any knowledge of Aquino's alleged protected activity. To get around this undeniable fact, Aquino relies on a cat's paw theory that has been expressly rejected by the Eleventh Circuit. *See Reynolds v. Winn-Dixie Raleigh Inc.*, 620 Fed. Appx. 785, 792 (11th Cir. 2015). Aquino's reliance on a theory foreclosed by Eleventh Circuit precedent further highlights the extraordinary weaknesses in her case.

For all of these reasons, Aquino's claim fails as a matter of undisputed fact and law.

## ARGUMENT

Aquino does not dispute that the *McDonnell-Douglas* burden-shifting framework applies to her retaliation claim. (Resp. at 2.) Application of that framework to the record evidence mandates a finding that Aquino has failed to establish a *prima facie* case of retaliation and has failed to establish that the University's termination decision was a pretext for retaliation. A district court must grant summary judgment when "a party fails to make a showing sufficient to establish

3

the existence of an essential element of that party's case." *Ojeda v. Louisville Ladder Inc.*, 410 Fed. Appx. 213, 216 (11th Cir. 2010). Because Aquino has failed to make these requisite showings on multiple bases, the Court properly should enter summary judgment in favor of the University.

**I.      Aquino has Failed to Establish a *Prima Facie* Case of Retaliation.**

A *prima facie* case of FCA retaliation requires the plaintiff to prove three elements: "(1) he engaged in protected conduct, (2) the defendant took adverse action against his employment, and (3) the defendant took the adverse action because of his protected conduct." *Kalch v. Raytheon Tech. Servs. Co., LLC*, No. 616CV1529ORL40KRS, 2017 WL 3394240, at *3 (M.D. Fla. Aug. 8, 2017) (citations omitted). The record evidence establishes that Aquino cannot prove either the first or third elements of her *prima facie* case. Either failure is fatal to her case. *See Wolf v. MWH Constructors, Inc.*, 34 F. Supp. 3d 1213, 1227 (M.D. Fla. 2014) ("summary judgment is appropriate if the plaintiff fails to satisfy any of the elements of a *prima facie* case").

**A.      Aquino Failed to Engaged in Protected Activity.**

First, Aquino never engaged in statutorily protected activity. Statutorily-protected activity <u>requires</u> the plaintiff to have opposed the actual submission of false claims <u>to the government</u> for reimbursement. *McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005) (citing *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)); *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002); *United States v. Marder*, 208 F. Supp. 3d 1296, 1312 (S.D. Fla. 2016).

In her Response, Aquino argues that the University "misunderstands" what protected activity is under the FCA and cites *McNutt* for the proposition that "violations of the Anti-Kickback Statute is a False Claims Act violation because compliance with the Statute is necessary for reimbursement under the Medicaid program." (Resp. at 2-3.) That characterization of *McNutt*

4

is simply incorrect. Rather, in *McNutt*, the Eleventh Circuit reaffirmed the principle that the False Claims Act "does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." *McNutt*, 423 F.3d at 1259 (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). Hence, in *McNutt*, a FCA claim could exist where the defendants "submitted claims for reimbursement knowing that they were ineligible for the payments demanded in those claims" and the plaintiff "identified as false numerous specific claims the [defendants] made to the federal government." *Id*. That is the antithesis of this case. Here, the record is undisputed that Aquino has no knowledge about the University's Medicare billing practices; nor has Aquino identified a single false claim submitted to the government for payment.[1]

Moreover, Aquino's alleged complaints had nothing to do with false claims <u>to the government</u>. Rather, taking the record evidence in the light most favorable to Aquino, Aquino only complained about an alleged practice of collecting money directly from patients and an alleged HIPAA violation related to the structure of Dr. De La Cruz-Munoz's office. Neither is FCA-protected activity as a matter of law. In addition to the numerous cases cited by the University in its Motion (none of which were rebutted by Aquino), the recent case of *U.S., ex rel. Johnson v. Kaner Med. Group, P.A.*, 641 Fed. Appx. 391 (5th Cir. 2016), is particularly instructive. In *Johnson*, the Fifth Circuit affirmed summary judgment in favor of the defendant-employer in an FCA retaliation case because the plaintiff-employee never engaged in any FCA-protected activity.

---

[1] On this latter point, Aquino would be required to identify specific claims and present evidence of the actual claims themselves in order to meet her burden. *See, e.g.*, *U.S. ex rel. Magid v. Wilderman*, No. CIV.A.96-CV-4346, 2004 WL 1987219, at *5 (E.D. Pa. Aug. 18, 2004) (excluding explanations of Medicare claims under the Best Evidence Rule because the proponent was required to introduce the claims themselves). Aquino certainly has not done so.

*Id*. at 395. The Fifth Circuit held that complaints about the collection of money from Medicare patients directly was not protected activity as a matter of law:

> Johnson argues that the two e-mails she sent to her supervisors raising concerns about KMG's billing practices in June 2012 qualify as protected activity under the whistleblower provision. **But, the concerns Johnson raised to her supervisors involved the direct billing of Medicare–Medicaid patients. While both of those programs are Government run, Johnson has failed to demonstrate how her actions investigating this practice were in furtherance of uncovering or preventing fraud against the Government.** At oral argument, Johnson argued that her activity was protected under the FCA because the Government has an interest in the proper billing of their Medicare–Medicaid patients. **But, in directly billing Medicare–Medicaid patients, KMG was not presenting any false claim for payment to the Government. Instead, it was seeking payment from the patients themselves. Because Johnson has failed to adequately show how directly billing Medicare–Medicaid patients relates to the presentation of false claims for payment to the Government, she has failed to raise a genuine dispute of material fact that she engaged in protected activity under the FCA.** Therefore, we affirm the district court's grant of summary judgment on her retaliation claim.

*Id*. (emphasis added). For the same reason, complaints about HIPAA violations do not constitute protected activity under the FCA because such violations do not relate to the government's payment of a fraudulent claim. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 469 (6th Cir. 2011).[2]

Finally, as noted in the Motion, "a person who acts to oppose an FCA violation for reasons other than protecting the federal government from potential fraud has not engaged in protected conduct." *Arthurs v. Glob. TPA LLC*, 208 F. Supp. 3d 1260, 1265–66 (M.D. Fla. 2015). Here, Aquino has admitted that the "real issue" Aquino sought to rectify with her complaints was to "help the patients" regarding the $2,500.00 payment - - not to combat fraud upon the government. (D.E. 82 ¶ 31; D.E. 90 ¶ 31.) For this reason, as well, she has not engaged in protected activity.

---

[2] Aquino's Response does not even attempt to argue that complaints about a HIPAA violation would constitute protected activity. (*See* D.E. 88.)

### B. Aquino has Failed to Establish Causation.

Even if Aquino had engaged in statutorily-protected activity, Aquino has failed to establish this activity was the but-for cause of her termination. To start, Aquino has failed to introduce any evidence that the "***final decision-maker who approves or implements the adverse employment action knew about the plaintiff's protected conduct***." *Kalch v. Raytheon Tech. Servs. Co., LLC*, No. 616CV1529ORL40KRS, 2017 WL 3394240, at *3 (M.D. Fla. Aug. 8, 2017) (emphasis added); *Reynolds v. Winn-Dixie Raleigh Inc.*, 620 Fed. Appx. 785, 792 (11th Cir. 2015) (affirming summary judgment on FCA retaliation claim where the plaintiff failed to "present any evidence that the decision makers . . . knew that [he] had spoken . . . about potential false claims"). To the contrary, the record establishes that there were only three decisionmakers (Mr. Warwar, Ms. Stimmell and Dr. Keitz) and that none of them knew of Aquino's alleged protected conduct.[3]

To get around this undeniable fact, Aquino now argues that Lilliam Dana, who signed the termination letter, also was a decisionmaker. This argument fails for several reasons. First, the University's authenticated business records and sworn declarations establish that this is not true. In fact, the record evidence establishes that, in accordance with the University's standard HR practices, termination decisions are made by and through the HR Department; that the HR Department prepares the termination letter, and that the letter is signed and delivered to the terminated employer by her supervisor. That is the process that was followed in this case. Second,

---

[3]   Aquino purports to challenge the statements in Ms. Stimmell's first declaration. That objection, however, is meritless. *See In re Intern. Mgmt. Assocs., LLC*, 781 F.3d 1262, 1268–69 (11th Cir. 2015) (business records exception encompasses internal company records, even if the witness does not have "firsthand knowledge of the contents of the records, of their authors, or even of their preparation"). This Court has reasoned similarly. *Silva v. Baptist Health S. Fla., Inc.*, No. 14-CV-21803, 2015 WL 12030094, at *1 (S.D. Fla. Apr. 14, 2015) (noting that "personal knowledge can come from a review of the contents of business files and records" and admitting business records and sworn declaration testimony regarding same).

Aquino's "interpretation" about the meaning of the termination letter is not admissible. *Johnson v. Scotty's, Inc.*, 119 F. Supp. 2d 1276, 1283 (M.D. Fla. 2000) (striking plaintiff's opinions about her termination letter because "she did not write the letter and her opinion is formed on speculation"). Third, the cases on which Aquino purports to rely (Resp. at 7-8) are entirely distinguishable as, in each of those cases, there was record evidence that the person who drafted the termination letter also was involved in the investigation into the employee's misconduct and the termination decision. No such evidence exists here.

Aquino's suggestion that Dr. De La Cruz-Munoz was a decisionmaker is even more deficient. (Resp. at 8-9.) Again, aside from Aquino's self-serving surmise, there is no evidence in this record that Dr. De La Cruz-Munoz participated in any way in the termination decision. Recognizing this fact, Aquino argues that he could be considered a decisionmaker under a cat's paw theory. (*Id.*) That theory, however, is inapplicable to FCA retaliation cases as a matter of law:

> Here, Reynolds failed to establish causation because he did not present any evidence that the decision makers—Cobb, Bandy, and Fegan—knew that Reynolds had spoken to Todd about potential false claims. In fact, Reynolds admitted he only talked with Todd and their pharmacy technician about his concerns. Reynolds cannot avoid this result by relying upon a "cat's paw" theory. This Court has not yet applied the cat's paw theory in an FCA retaliation case. Furthermore, this Court has indicated that while the theory may be appropriate in cases in which the plaintiff is required to prove only that the protected characteristic was a motivating factor, such as in Title VII disparate treatment claims, the theory is inappropriate when the statute requires "but-for" causation.

*Reynolds v. Winn-Dixie Raleigh Inc.*, 620 Fed. Appx. 785, 792 (11th Cir. 2015). Other courts have reasoned similarly. *Kalch v. Raytheon Tech. Servs. Co., LLC*, No. 616CV1529ORL40KRS, 2017 WL 3394240, at *4 (M.D. Fla. Aug. 8, 2017) (rejecting cat's pay theory in FCA retaliation case); *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 323 n.3 (5th Cir. 2016) (same).

8

Finally, Aquino fails to address the University's argument in the Motion that, even if a decisionmaker had been aware of Aquino's alleged protected activity, Aquino cannot establish causation because her intervening misconduct (which Aquino has admitted in substantial part) severs any causal link between her alleged protected activity and her termination. *See, e.g., Henderson v. FedEx Express*, 442 Fed. Appx. 502, 506 (11th Cir. 2011).

## II. The University had Legitimate, Non-Retaliatory and Non-Pretextual Reasons to Terminate Aquino's Employment.

Aquino does not dispute that the University has articulated numerous, non-retaliatory reasons for its termination decision; instead, Aquino argues that the University's reasons are pretextual. (Resp. at 10-13.) To show pretext, a "a plaintiff must adduce evidence not only that the employer's proffered reason is false, but also that unlawful retaliation was the employer's true motive." *Fernandez v. Winn-Dixie Stores, Inc.*, No. 17-CV-60322, 2018 WL 538699, at *8 (S.D. Fla. Jan. 24, 2018) (citing *Feise v. N. Broward Hosp. Dist.*, 683 Fed.Appx. 746, 752 (11th Cir. 2017)). The "inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Id*. Where an employer has policies that prohibit misconduct and believes that an employee violated those policies, a pretext claim necessarily fails: "an employer can hardly be said to have discriminated or retaliated against an employee if it terminated the employee based on a good faith belief that she violated a rule, even if the purported violation never actually occurred." *Id*.

Here, Aquino cannot prove pretext in light of Mr. Michaud's investigative report and file (which contains Aquino's own statements admitting theft and copies of e-mails showing her creation and operation of another business on company time using University-patient information). Further, at the very least, Aquino has conceded that money mysteriously went missing from the University; that it was her responsibility to safeguard that money; and that she "owed" it to the

9

University. That concession vitiates any claim of pretext. *See Garcia v. DS Waters of Am., Inc.*, 372 Fed. Appx. 925, 927 (11th Cir. 2010) ("Because [the plaintiff] has admitted in his deposition that at least two of the legitimate non-discriminatory reasons for firing him were accurate, he has failed to rebut [the defendant's] nondiscriminatory reason."); *Rose v. Wal-Mart Stores E., Inc.*, 631 Fed. Appx. 796, 799 (11th Cir. 2015) (where employee admits to having engaged in some misconduct, he cannot prove pretext).

In fact, even if the University had been mistaken about all of Aquino's misconduct (a finding completely belied by this record), Aquino's pretext claim still would fail. A "plaintiff cannot show pretext merely by showing that an employer's good faith belief that the plaintiff engaged in misconduct is mistaken." *Rawls v. Ala. Dept. of Human Res.*, 507 Fed. Appx. 895, 898 (11th Cir. 2013); *Entrekin v. City of Panama City Fla.*, 376 Fed. Appx. 987, 997 (11th Cir. 2010). Here, the record evidence establishes that the decisionmakers had a good-faith belief that Aquino had committed misconduct - - a belief supported by ample, competent evidence. On this record, any claim of pretext necessary fails.[4]

### III. Conclusion

It bears repeating that Aquino failed to propound any discovery in this case and failed to depose the relevant decisionmakers. That is because even the most minimal discovery would have

---

[4] In her Response, Aquino argues that other employees also violated policy but were not terminated. These conclusory assertions must be disregarded. To show a valid comparator, a plaintiff must set forth sufficient facts to show that she and her comparator "are similarly situated in all relevant respects." *Word v. AT&T*, 576 Fed. Appx. 908, 914 (11th Cir. 2014). The proffered comparator "must be nearly identical to the plaintiff." *Woods v. Cent. Fellowship Christian Acad.*, 545 Fed. Appx. 939, 945 (11th Cir. 2013). Conclusory statements that a plaintiff was treated differently are insufficient. *Id*. Here, there is no evidence that any employee engaged in the same type and level of misconduct as Aquino (theft, operation of competing business using University e-mail and patient information) but was not terminated. In fact, Ms. Stimmell's first declaration establishes that no such comparator exists.

revealed the complete lack of merit for her claim. At this juncture, summary judgment properly should be entered in favor of the University. Further, the University should be awarded its reasonable attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d)(4) - - a request made in the Motion but not addressed by Aquino in her Response.

          Respectfully submitted,

          **ISICOFF RAGATZ**
          601 Brickell Key Drive, Suite 750
          Miami, Florida 33131
          Tel.: (305) 373-3232
          Fax: (305) 373-3233

          By: /s/ Christopher M. Yannuzzi
              Eric D. Isicoff
              Florida Bar No. 372201
              Isicoff@irlaw.com
              Teresa Ragatz
              Florida Bar No. 545170
              Ragatz@irlaw.com
              Christopher M. Yannuzzi
              Florida Bar No. 92166
              Yannuzzi@irlaw.com

## **CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF this 11th day of April, 2018, upon the following:

| | |
|---|---|
| Juan Carlos Montes, Esq. | Jessica Elise Elliott, Esq. |
| Montes & Associates Law Firm, PL | United States Attorney's Office |
| 16351 Miramar Parkway | Southern District of Florida |
| Miramar, Florida 33027 | 99 NE 4th Street |
| jcmontes@monteslawfirm-florida.com | Miami, Florida 33132 |
| service@monteslawfirm-florida.com | jessica.elliott@usdoj.gov |
| | |
| *Co-counsel for Relator* | *Counsel for the United States of America* |

Benedict P. Kuehne, Esq.
Michael T. Davis, Esq.
Law Office of Benedict P. Kuehne, P.A.
100 S.E. 2nd St., Suite 3550
Miami, Florida 33131
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

*Co-counsel for Relator*

                                                 By: /s/ Christopher M. Yannuzzi
                                                    Christopher M. Yannuzzi